IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GLORIA CLARK,

        Plaintiff,                No. CIV S-04-2354 KJM

   vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.         ORDER

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

1

1  I.  Factual and Procedural Background

2          In a decision dated August 17, 2001, the ALJ determined plaintiff was not

3  disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals

4  Council denied plaintiff's request for review.  The ALJ found plaintiff has a severe impairment

5  of schizoaffective disorder but this impairment does not meet or medically equal a listed

6  impairment; plaintiff's testimony is not substantially credible; plaintiff can perform work at all

7  exertional levels but is limited to simple, routine, unskilled work and with no frequent social

8  interaction with the public or coworkers; plaintiff cannot perform her past relevant work; and

9

10 ────────────────

11         [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
   Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid
12 to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability
   is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
13 medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
   1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
14 §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
   following summarizes the sequential evaluation:
15
            Step one:  Is the claimant engaging in substantial gainful
16 activity?  If so, the claimant is found not disabled.  If not, proceed
   to step two.
17         Step two:  Does the claimant have a "severe" impairment?
   If so, proceed to step three.  If not, then a finding of not disabled is
18 appropriate.
            Step three:  Does the claimant's impairment or combination
19 of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
   404, Subpt. P, App.1?  If so, the claimant is automatically
20 determined disabled.  If not, proceed to step four.
            Step four:  Is the claimant capable of performing his past
21 work?  If so, the claimant is not disabled.  If not, proceed to step
   five.
22         Step five:  Does the claimant have the residual functional
   capacity to perform any other work?  If so, the claimant is not
23 disabled.  If not, the claimant is disabled. ────────────────

24 Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25         The claimant bears the burden of proof in the first four steps of the sequential evaluation
   process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26 evaluation process proceeds to step five.  Id.

2

1    using grid rule 204.00 as a framework for decision making, plaintiff is not disabled.[2]

2    Administrative Transcript ("AT") 24-25.  Plaintiff contends the ALJ incorrectly analyzed

3    whether she meets a listing; did not accord proper weight to the opinions of treating physicians;

4    improperly discredited plaintiff; and should not have relied on the grids in finding plaintiff is not

5    disabled.

6    II.  Standard of Review

7         The court reviews the Commissioner's decision to determine whether (1) it is

8    based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

9    record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

10   Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

11   Substantial evidence means more than a mere scintilla of evidence, but less than a

12   preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

13   Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

14   reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

15   U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

16   197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

17   782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

18   detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

19   1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

20   supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

21   substantial evidence supports the administrative findings, or if there is conflicting evidence

22   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

23

24        [2] Plaintiff asserts in a footnote that she was found disabled on a subsequent application.
     That determination was not made part of the administrative record nor has plaintiff requested the
25   court take judicial notice of that determination.  In any event, what is at issue in this case is
     plaintiff's mental condition during the time period adjudicated by the ALJ's decision challenged
26   here.

1   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

2   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

3   1335, 1338 (9th Cir. 1988).

4   III.  Analysis

5       A.  Listings

6           Plaintiff contends the ALJ improperly analyzed whether plaintiff met or equaled

7   Listing 12.03.  The Social Security Regulations' "Listing of Impairments" is comprised of

8   impairments to certain specified categories of body systems that are severe enough to preclude a

9   person from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir.

10  1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe

11  that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a

12  listing, all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550

13  (9th Cir. 1985).

14          To meet a listed impairment, a claimant must establish that he or she meets each

15  characteristic of a listed impairment relevant to his or her claim.  To equal a listed impairment, a

16  claimant must establish symptoms, signs and laboratory findings "at least equal in severity and

17  duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is

18  not listed, then to the listed impairment "most like" the claimant's impairment.  20 C.F.R.

19  § 404.1526.  Where more than one impairment is present, but the impairments do not meet or

20  equal a listed impairment, the impairments will be considered in combination to determine

21  whether the combination is medically equal to any listed impairment.  Id.  The claimant's

22  impairments "must be considered in combination and must not be fragmentized in evaluating

23  their effects."  Lester v. Chater, 81 F.3d 821, 829 (9th Cir. 1995) (citations omitted).  A finding

24  of equivalence must be based on medical evidence only.  20 C.F.R. § 404.1529(d)(3).  A

25  generalized assertion of functional problems is not enough to establish disability at step three.

26  Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999).

4

1    Mental disorders are considered in Part 12 of the Listings.  Listing 12.03

2 addresses schizophrenic, paranoid and other psychotic disorders.  The Listing is comprised of

3 two parts, labeled  "A" and "B".  Both parts of the listing must be met or equaled.[3]   The Part A

4 criteria determine whether evidence of a depressive disorder is present.  20 C.F.R. Part 404,

5 Subpt. P, App. 12.04(A).  The Part B criteria evaluate the functional loss resulting from a

6 depressive disorder.  See, e.g., Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614,

7 616 (10th Cir. 1995).  The ALJ found plaintiff did not meet or equal the "B"criteria.  AT 21.

8    Part B of Listing 12.03 requires at least two of the following functional

9 limitations:

10    1.  marked restriction of activities of daily living;

11    2.  marked difficulties in maintaining social functioning;

12    3.  marked difficulties in maintaining concentration, persistence or

13    pace; or

14    4. repeated episodes of decompensation, each of extended duration.

15 "Marked" means "more than moderate, but less than extreme."  See Listing 12.00(C).

16    The ALJ found plaintiff did not meet or equal Listing 12.03 because there was no

17 evidence of marked limitations in daily living, social functioning, or ability to concentrate

18 sufficiently to complete work tasks.  AT 21.  In reaching this finding, the ALJ set forth a detailed

19 and accurate summary of plaintiff's mental health treatment records, which failed to show

20 marked limitations extending over a continuous twelve month period.  AT 21-22, 120-193, 281-

21 309. The ALJ also relied on the assessment of the consultative psychiatrist, Dr. Greenleaf, and

22 that of the nonexamining state agency physician, who assessed only slight to moderate

23 limitations in nonexertional functioning.  AT 22, 194-199, 255-280.  There was no error in the

24 step three analysis.

25

26    [3]  Alternatively, the requirements of Part C may be satisfied.  Part C is inapplicable in the
circumstances of this case.

5

B. Physician's Opinion

Plaintiff contends the ALJ improperly discounted the opinions of her treating mental health practitioners, Drs. Tabilon and Hashem.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

/////
/////
/////
/////

Plaintiff contends the ALJ improperly discounted assessments by her treating mental health practitioner, Dr. Tabilon, as to plaintiff's GAF[4] at various times during the relevant period. Plaintiff's alleged onset of disability was February 1, 1994. In February 1995, plaintiff was assessed as having a GAF of 50, after release from hospitalization where her intake GAF forty-five days previously was 30. AT 148. Dr. Tabilon assessed plaintiff with a GAF of 45 in July 1995. AT 147. The record does not indicate plaintiff was seen by any mental health practitioner from July 1995 to January 1997. AT 143-144; cf. AT 142 (last lab drawn for Tegretol level in September 1996), 331 (plaintiff testified she received a shot once a month since 1998). In July 1997, Dr. Tabilon assessed a GAF of 55. AT 128. He assessed a GAF of 50 in June 1999 and July 2000. AT 225, 290.

Although the ALJ did not specifically address the GAFs assessed by Dr. Tabilon, there was no error in failing to do so. Dr. Tabilon made no assessments with respect to work functions and the GAF does not correlate to the severity assessments utilized in Social Security disability determinations.[5] With respect to the GAFs of 45, impairment in the inability to work is

---

[4] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM IV-TR") at 34. A GAF of 31-40 indicates: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)" Id. A 41-50 rating indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning. Id. A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers.) Id.

[5] 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

Comment: Two commenters recommended that we discuss the Global Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D. They noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and seemed to encourage its use, but then failed to mention it in the proposed rules.

Response: We did not adopt the comment. We did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs, but to indicate why the third

1   only one example of the level of adaptation meriting such a rating.  There is no indication in the

2   record that Dr. Tabilon's assessment was based on an inability to work.  Moreover, the GAFs of

3   50 are on the borderline of the 51-60 range, which indicates only moderate symptoms.  In

4   addition, the ALJ fairly characterized the record as demonstrating improvement in plaintiff's

5   mental condition after her release from hospitalization in 1995 and that her symptoms were

6   controlled with medication.  On this record, plaintiff's assertion that Dr. Tabilon's GAF

7   assessments impliedly opined plaintiff was incapable of performing work tasks of a simple,

8   routine, unskilled nature that did not involve frequent social interaction with the public and

9   coworkers is unfounded.  Cf. AT 24 (Finding no. 5).

10              Plaintiff also contends the ALJ improperly rejected the limitations assessed by Dr.

11   Hashem who, in February 2001, filled out a mental assessment form.  AT 311-312.  After setting

12   forth in detail a summary of the medical evidence, the ALJ rejected Dr. Hashem's opinion as

13   unsupported by the objective medical evidence and inconsistent with the evidence showing

14   substantial mental health improvement.  AT 21-23.  In rejecting Dr. Hashem's opinion, the ALJ

15   also properly noted the opinion was conclusory and inconsistent with the December 1999

16   assessment of the examining consultative psychiatrist, AT 194-199, as well as the state agency

17   physician.  AT 268-271.  These reasons are specific and legitimate and supported by substantial

18   evidence.  There was no error in the ALJ's analysis of the treating mental health practitioner's

19   opinions.

20   /////

21   /////

22

23   sentence of the second paragraph of proposed 12.00D stated that an individual's medical source
     "normally can provide valuable additional functional information." To assess current treatment

24   needs and provide a prognosis, medical sources routinely observe and make judgments about an
     individual's functional abilities and limitations.  The GAF scale, which is described in the

25   DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by
     the American Psychiatric Association.  It does not have a direct correlation to the severity
     requirements in our mental disorders listings.

26

C.  Credibility

Plaintiff contends the ALJ improperly discredited her testimony regarding her inability to work due to mental illness.  The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172,

177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In arguing the ALJ improperly discredited plaintiff's subjective complaints, plaintiff essentially rehashes the same arguments discussed above.  In considering plaintiff's testimony regarding her mental limitations, the ALJ thoroughly evaluated the medical record, noted the improvement in plaintiff's mental condition with medication, the gap in treatment for an allegedly debilitating condition, and the inconsistency between plaintiff's testimony and the conclusions of the examining physician and nonexamining state agency psychiatrist.  AT 21-23.  The ALJ also accommodated significant mental limitations by limiting plaintiff to work tasks of a simple, routine, unskilled nature and limiting plaintiff to work that did not involve frequent social interaction with the public and coworkers.  The factors considered by the ALJ all were valid and supported by the record.  The ALJ's credibility determination was based on permissible grounds and will not be disturbed.

D.  Grids

Plaintiff contends the ALJ improperly relied on the grids in finding plaintiff was not disabled.  The Medical-Vocational Guidelines ("the grids") are in table form.  The tables present various combinations of factors the ALJ must consider in determining whether other work is available.  See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience.  For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see

1   also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ

2   may rely on the grids, however, even when a claimant has combined exertional and nonexertional

3   limitations, if nonexertional limitations are not so significant as to impact the claimant's

4   exertional capabilities.[6]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on

5   other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864

6   F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983)

7   (requiring significant limitation on exertional capabilities in order to depart from the grids).

8          As discussed above, the ALJ properly rejected Dr. Hashem's opinion regarding

9   nonexertional limitations and properly discredited plaintiff's testimony.  Relying on the

10  assessments of the examining consultative psychiatrist and the state agency physician, the ALJ

11  found plaintiff retained the residual functional capacity to perform work at all exertional levels

12  but that her nonexertional limitations limited her to unskilled work with limited contact with

13  people.  AT 24 (Finding no. 5); AT 194-199 (plaintiff can work with adequate pace and

14  persistence), 264-265 (only moderately limited in sustained concentration and persistence).  As

15  the ALJ correctly noted, approximately 2,500 unskilled jobs are noticed by the grids for medium

16  work.  20 C.F.R., Pt. 404, Subpt. P, App. 2, § 203.00.  There are additional unskilled jobs

17  available at the heavy exertion level.  SSR 85-15.  The primary work functions in the bulk of

18  unskilled work relate to working with things, rather than people.  See 20 C.F.R. Pt 404. Subpt P.

19  App. 2, § 201.00(h)(4)(I) (addressing sedentary work); see also 20 C.F.R. Pt 404. Subpt P. App.

20  2, § 202.00(g) (addressing light work); 20 C.F.R. Pt 404. Subpt P. App. 2, § 203.00 (ability to

21

22     [6] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n.6 (9th Cir.1989).

23      Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R.

24  § 416.969a(c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n.7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability

25  to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d

26  953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1   perform medium work includes the ability to perform sedentary and light work).  Given

2   plaintiff's ability to work at all exertional limitations and the accommodation of plaintiff's

3   mental limitations by restricting plaintiff to unskilled work, the ALJ properly relied on the grids,

4   which administratively notice a significant number of jobs available to plaintiff.

5         The ALJ's decision is fully supported by substantial evidence in the record and

6   based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

7         1.  Plaintiff's motion for summary judgment or remand is denied, and

8         2.  The Commissioner's cross-motion for summary judgment is granted.

9   DATED:  March 30, 2006.

10

11                               _____

12                       UNITED STATES MAGISTRATE JUDGE

13

14

15   006
     clark.ss

16

17

18

19

20

21

22

23

24

25

26